**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **MALCOLM TORRES and** | § | |
| **SANDRA MORUA, a/n/f of** | § | |
| **L.T.M., a minor,** | § | |
| *Plaintiffs* | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | _____ |
| **BAY CITY INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| *Defendant* | § | |
| | § | *JURY REQUESTED* |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, Malcolm Torres ("Torres") and Sandra Morua ("Morua) a/n/f of L.T.M., a minor, (collectively referred to as the "Plaintiffs"), and file this Original Complaint against Bay City Independent School District ("Defendant") and in support respectfully show the Court as follows:

### I. BRIEF INTRODUCTION

1.      L.T.M. is a minor residing with his father and mother in Bay City, Texas.

### II. PARTIES

2.      L.T.M. is a minor residing with his father and mother in Bay City, Texas.

3.      Torres is an individual residing in Bay City, Texas, and is the legal guardian and father of L.T.M.

4.      Morua is an individual residing in Bay City, Texas, and is the legal guardian and mother of L.T.M.

5.      Defendant is a political subdivision of the State of Texas and is a local educational agency, within the meaning of state and federal law. They may be served by and through the school

district's Superintendent, Dr. Marshall Scott III, at Bay City Independent School District, 520 7th Street, Bay City, Texas 77414.

## III.  JURISDICTION

6.      The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the laws and rules of the United States as noted herein.

7.       Further, this Court has jurisdiction to award the relief requested herein, including but not limited to attorneys' fees and costs to the Plaintiffs pursuant to  42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA") pursuant to  42 U.S.C. § 2000d *et seq*.

## IV.  VENUE

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## V.  CONDITIONS PRECEDENT

9.      All conditions precedent have been performed or occurred.

## VI.  RESPONDEAT SUPERIOR

10.     Defendant is legally responsible to the Plaintiffs for the  acts and omissions of their employees, agents, servants, and representatives under the legal doctrines of *respondeat superior*, agency, and/or ostensible agency.  As a result thereof, the Defendant is vicariously liable for all wrongful and illegal acts, omissions, and conduct of their employees, agents, servants and representatives.

Plaintiffs' Original Complaint

## VII. **ADMINISTRATIVE EXHAUSTION**

11.     To the extent that Plaintiffs' claims herein may implicate the Individuals with Disabilities

Act ("IDEA"), Plaintiffs filed their *Request for Special Education Due Process Hearing & Request*

*for Section 504 Hearing* ("Due Process Hearing Request") with the Texas Education Agency on

June 6, 2021.  It was given Docket Number 205-SE-0621.

12.     On July 6, 2021, Stacy May, Special Education Hearing Officer for the State of Texas,

issued Order No. 2 identifying five (5) issues regarding a free appropriate public education

("FAPE") within Plaintiffs' Due Process Hearing Request.

13.     On September 2, 2021, the Special Education Hearing Officer dismissed with prejudice

Docket Number 205-SE-0621 as Plaintiffs and Defendant resolved the identified issues through

informal settlement negotiations.

14.     As such, Plaintiffs have gone through "Administrative Exhaustion" in this cause pursuant

to 20 U.S.C. §§ 1415(f),(g).

## VIII. **FACTS**

15.     L.T.M. is a five-year-old male student attending Cherry Elementary School (the "School")

within Bay City Independent School District.

16.     He is diagnosed with autism and a speech impairment, which is reflected in various

Admission, Review, and Dismissal ("ARD") Committee records.  L.T.M. is considered disabled

and in need of special education by the School's ARD Committee.

17.     The School's ARD Committee and special education personnel understood that L.T.M.'s

behavior, due to his disabilities, complicated his ability to receive instruction.  Nevertheless, the

School did not implement a Behavior Intervention Plan prior to August 2021, nor did it take any

Plaintiffs' Original Complaint

meaningful steps to ensure that the special education personnel instructing L.T.M were capable of appropriately and adequately handling L.T.M.'s disabilities and associated behavioral outbursts.

18.     On or about March 30, 2021, L.T.M. was at School in his designated special education classroom under the instruction of Rhonda Robinson ("Robinson") and three (3) other personnel. There were approximately four (4) students in the classroom at issue.

19.     L.T.M. experienced a behavioral outburst in class while receiving instruction.  In response, Robinson grabbed L.T.M by the arm, scolded him, and dragged him as he flailed and screamed into a calming corner located in a corner of the room.

20.     The calming corner of the classroom was created by School personnel utilizing bookshelves and cubby shelves as barriers near a corner of the classroom to create a makeshift square room with one narrow entrance in and out.

21.     Once L.T.M. was in the calming corner, Robinson held a large stuffed item, similar to a punching bag, toward L.T.M. and used her body and the item to block the sole entrance to the corner.  L.T.M., still flailing and screaming, was physically restrained within the calming corner by Robinson and effectively imprisoned against his will.

22.     Chaos descended upon the classroom.  The lights in the classroom were turned off with only a blue glow from decorative lights strung up near the teacher's desk.

23.     Soon after, another child experiencing a behavioral outburst was forcefully placed into the same calming corner as L.T.M.  The child began kicking and hitting L.T.M. as Robinson continued to block any escape from the calming corner.  No meaningful actions were taken by Robinson or the other personnel in the classroom to prevent injury to L.T.M. or remedy the abhorrent situation.

24.     Instead of attempting to stop injury to L.T.M. or attempting to implement any behavioral management techniques appropriate for a child with L.T.M.'s disabilities, one special educator

Plaintiffs' Original Complaint

standing near Robinson pushed another cubby shelf to block the only entrance to the calming corner trapping both children inside.  L.T.M. can be seen in classroom surveillance video attempting to free himself from the dangerous and frightening situation to no avail.

25.     L.T.M.'s parents were not notified by the School or the District of the events that unfolded on March 30, 2021.  The first time L.T.M.'s parents were made aware of the horrific March 30, 2021 event was nearly 17 days after it occurred and by happenstance.

26.     On April 16, 2021, Torres was in route to a picnic at the School when he received a call from an agent with the Texas Department of Family and Protective Services ("DFPS").  The agent indicated that an investigation involving L.T.M. and a March 30, 2021 incident at the School was ongoing.

27.     Once he arrived at the School's picnic, Torres was approached by Selina Garcia ("Garcia"), Defendant's ADA/Section 504 Coordinator and Special Programs Coordinator.  She discussed for the first time with Torres the March 30, 2021 incident involving L.T.M.

28.     At this time, Torres requested to see the classroom's surveillance video.  It was on this day that Torres was first shown the classroom surveillance video from March 30, 2021.  Torres also learned on the same day that Garcia initiated an investigation, both internally and with DFPS, of the incident without notifying L.T.M.'s parents.

29.     Surprisingly, to date, Plaintiffs have only been allowed by Defendant to view a few minutes of the hours of classroom surveillance video recorded on the day at issue.

30.     Subsequently, Torres and Moura have learned that Robinson was a new and inexperienced special educator.

31.     Torres and Moura have also learned that Defendant's Behavior Specialist for the district, Amy Hildebrand ("Hildebrand"), sporadically observed L.T.M. through the 2020-2021 school

Plaintiffs' Original Complaint

year for no more than 30 minutes a visit.  Surprisingly, Hildebrand was unaware of L.T.M.'s behavioral issues.  Further, Hildebrand admitted to the School's ARD committee that a revolving door of staff impacted the quality of the services provided to L.T.M.

## IX.  STATE ACTION

32.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

33.     Defendant was at all times and in all matters acting under color of federal and state law in regard to the acts and omissions alleged by Plaintiffs.

34.     Defendant was at all times and in all matters receiving federal funds during the period in question.

## X.  CLAIMS FOR RELIEF PURSUANT TO THE REHABILITATION ACT

35.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

36.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules.  To the degree that a policy or practice hinders honest consideration of a disabled students unique and individualized needs and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

37.     Plaintiffs assert that because Defendant has failed to keep L.T.M. safe from harm and failed to provide him an environment that was not hostile, such failures as noted above, have, together

Plaintiffs' Original Complaint

and separately, contributed to violating his rights under Section 504 and the federal rules and regulations promulgated pursuant thereto.

38.     In addition and in the alternative, the acts and the omissions of Defendant rose to the level of a gross mismanagement and misjudgment of L.T.M.'s educational plan and also a separate violation of Section 504 thereby.

## XI.  CLAIMS FOR RELIEF PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

39.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

40.     The facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq ("ADA").

41.     Due to his status as a special education student, L.T.M. is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2) as he has a developmental disability that affects his major life activities.

42.     Defendant is deemed a "public entity" as defined in 42 U.S.C. § 12131(1) and receives federal financial assistance so as to be covered by the mandate of the ADA.

43.     Defendant provides a facility whose operation constitutes a program and services for ADA purposes.

44.     Defendant intentionally discriminated against L.T.M., in the manner and particulars noted above, violating the ADA thereby.

45.     In addition, and in the alternative, Defendant failed to reasonably modify and accommodate the programs and services offered to L.T.M., so that he could participate in academic and non-academic services to the same extent as non-disabled students, intentionally discriminated against L.T.M., and violated the ADA thereby.

Plaintiffs' Original Complaint

## XII.  STATE-CREATED DANGERS AND DUTIES

46.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

47.     L.T.M. is a student with a developmental disability.  He was trapped in a corner and was subjected to injury and distress by Defendant's personnel.

48.     For any and all the above, the acts and omissions of Defendant's personnel created the danger which caused the injuries to Plaintiffs.

## XIII.  CLAIMS PURSUANT TO  42 U.S.C. § 1983 AND THE 14th AMENDMENT TO THE U.S. CONSTITUTION

49.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

50.     Defendant, both acting under color of law and acting pursuant to customs and policies of the district, deprived L.T.M. of rights and privileges secured to him by the Fourth and Fourteenth Amendment to the United States Constitution and by other laws of the United States.

51.     In addition and in the alternative, Defendant singularly discriminated against L.T.M. as a class-of-one in failing to keep him safe, thereby violating the Equal Protection Clause of the Fourteenth Amendment, for which Defendant is liable to Plaintiffs pursuant to  42 U.S.C. § 1983.

52.     The acts and omissions of Defendant deprived L.T.M. of his rights to life, liberty and bodily integrity guaranteed under the due process clause of the United States Constitution, for which the Defendant is liable to him, pursuant to  42 U.S.C. § 1983 and for compensatory monetary damages.

## XIV.  UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES, AND CUSTOMS

53.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

Plaintiffs' Original Complaint

54.     Plaintiffs contend that Defendant also had a practice where staff were not given appropriate training and supervision in regard to dealing with a student with L.T.M.'s developmental disability which caused L.T.M. to suffer injury.

55.     Further, Defendant had a practice and custom in place of segregating L.T.M. based upon his disability.

56.     Both of these practices and customs acted to the detriment of L.T.M., failing to protect him from a known and inherently dangerous situation, thus violating the Fourth and Fourteenth Amendments of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

57.     Plaintiffs contend that these failures of Defendant to have policies, procedures, practices, and customs in place to assure staff were correctly trained so as to protect L.T.M. from a known and inherent dangerous situation violates the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

58.     Plaintiffs contend that these failures of Defendant to have policies, procedures, practices and customs in place to assure staff were correctly supervised so as to protect L.T.M. from a known and inherent dangerous situation violates the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

59.     Based upon the operative facts, such acts and omissions rise to the level of deliberate indifference, constituting a violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, and for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

## XV.  **RATIFICATION**

60.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

Plaintiffs' Original Complaint

61.     Defendant ratified the acts, omissions, and customs of its personnel and staff.

62.     As a result, Defendant is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of L.T.M. and for the discrimination against L.T.M.

## XVI.  <u>PROXIMATE CAUSE</u>

63.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

64.     Each and every, all and singular of the foregoing acts and omissions, on the part of Defendant, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XVII.  <u>DAMAGES</u>

65.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

66.     As a direct and proximate result of the conduct of Defendant, Plaintiffs have suffered injuries and damages, for which they are entitled to recover herein within the jurisdictional limits of this court, including but not limited to:

        a.  Physical pain in the past;

        b.  Mental anguish in the past;

        c.  Mental anguish in the future;

        d.  Mental health expenses in the past;

        e.  Mental health expenses in the future;

        f.  Physical impairment in the past; and

        g.  Various out-of-pocket expenses incurred by Plaintiffs but for the acts and omissions of Defendant.

Plaintiffs' Original Complaint

## XVIII.  **PUNITIVE DAMAGES**

67.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

68.     The acts and omissions of Defendant, by and through Robinson and the other personnel referenced herein, shocks the conscience, and thus satisfies criteria for punitive damages, as contemplated by Section 1983.

## XIX.  **ATTORNEY FEES**

69.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

70.     It was necessary for Plaintiffs to retain the undersigned attorney to file this lawsuit.  Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to  42 U.S.C. § 1988(b), 42 U.S.C. § 794a, 42 U.S.C. § 12131, pursuant to 42 U.S.C. § 2000 et. seq.

## XX.  **DEMAND FOR JURY TRIAL**

71.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

### **PRAYER**

72.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against Defendant and request an order including but not limited to the following relief:

> a.  A judgment in favor of Plaintiffs as supported by a finding that Defendant violated Section 504 of the Rehabilitation Act of 1973 by discriminating against L.T.M. based upon disability during the periods claimed, in total or in part;

Plaintiffs' Original Complaint

b.  A judgment in favor of Plaintiffs as supported by a finding that Defendant violated Section 504 of the Rehabilitation Act of 1973 when grossly mismanaging L.T.M.'s educational plan;

c.  A judgment in favor of Plaintiffs as supported by a finding that Defendant violated the Americans With Disabilities Act during the periods claimed, in total or in part;

d.  A judgment in favor of Plaintiffs, as supported by a finding that Defendant violated L.T.M.'s rights pursuant to the Fourth (4th) and Fourteenth (14th) Amendments to the United States Constitution during the periods claimed, in total or in part;

e.  A judgment in favor of Plaintiffs in an amount sufficient to fully compensate them for the elements of damages enumerated above;

f.  An order directing Defendant to pay punitive damages;

g.  An order directing Defendant to take any and all other specific actions required by any and all the statutes noted above;

h.  An order declaring Plaintiffs as a prevailing party so that Defendant would be required to pay or reimburse Plaintiffs for all costs of preparation and trial of this cause of action, including, but not limited to, costs of representation, advocate fees, attorney fees, and expert witness fees incurred by them up to and through trial and for its appeal, if required pursuant to Section 504 of the Rehabilitation Act of 1973; the ADA,  42 U.S.C. § 1983 and §1988; together with pre-judgement and post-judgment interest, and court costs expended herein; and

Plaintiffs' Original Complaint

i.  Such other relief as the Court may deem just and proper in law or in

equity.

Respectfully submitted,

BIVONA LAW, PLLC

By: */s/ Andrew M. Bivona*
Andrew M. Bivona
Texas State Bar No. 24092138
SDTX Federal ID No. 2979941
1415 Louisiana Street
29th Floor
Houston, Texas 77002
(713) 360-7596 (Telephone)
(713) 742-2041 (Facsimile)
drew@bivonalaw.com